Alexander H. Burke (*pro hac vice to be filed*)
Kyle D. McLean (*pro hac vice to be filed*)
BURKE LAW OFFICES, LLC
909 Davis Street, Suite 500
Evanston, IL 60201
(312) 729-5288
ABurke@BurkeLawLLC.com
KMcLean@BurkeLawLLC.com

Daniel Baczynski, Bar No. 15530
BACZYNSKI LAW, PLLC
136 W 12300 S, Ste B
Draper, UT 84020
(708) 715-2234
dan@bskilaw.com
*Local Counsel*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**

| | |
|---|---|
| DAVID HEAD, individually and on behalf of himself and all others similarly situated,<br>Plaintiff,<br>v.<br><br>WESTLAKE SERVICES, LLC D/B/A WESTLAKE FINANCIAL SERVICES,<br>Defendant. | **CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED**<br><br>Case No.: |

## INTRODUCTION

**"Americans passionately disagree about many things.**
**But they are largely united in their disdain for robocalls."**

*Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 140 S. Ct. 2335, 2343 (2020).

1. The Telephone Consumer Protection Act ("TCPA"), 47 U.S.C.§ 227(b), prohibits all prerecorded robocalls, regardless of the content, unless the caller has "prior express consent" from the called party. *Barr*, 140 S.Ct. at 2343.

2. Defendant Westlake Services, LLC d/b/a Westlake Financial Services ("Westlake") called Plaintiff David Head ("Plaintiff") at least one time using prerecorded and artificial voices, even though Westlake had actual knowledge that Plaintiff had not consented to such calls. In fact, Plaintiff has no relationship with Westlake whatsoever.

3. Westlake is no stranger to the TCPA. In 2013, a plaintiff filed a putative class action against Westlake after being bombarded with telephone calls despite never having a business relationship with the company. *See Duchene v. Westlake Services, LLC*, No. 2:13-cv-01577, Dkt. 1 (W.D. Pa. Sep. 26, 2013) (Class Action Complaint). Ultimately, the Western District of Pennsylvania certified and finally approved a class action settlement calling for Westlake to pay $10,000,000 for approximately 3,000,000 automated and prerecorded robocalls to approximately 800,000 class members. *Id.*, Dkt. 107 at 4; Dkt. 140 (W.D. Pa. Jul. 14, 2016) (Final Approval Order).

4. Over the years, Westlake and its affiliates have routinely been entangled in litigation across the United States for telemarketing practices allegedly in violation of the TCPA. *See, e.g, Bradshaw v. Westlake Financial*, No. 4:17-cv-00890 (E.D. Tex.); *Scott v. Westlake Financial Network, Inc.*, No. 1:12-cv-09289 (N.D. Ill.); *Walker v. Westlake Financial Services, LLC*, No. 1:19-cv-06921 (N.D. Ill.); *Johnson v. Westlake Portfolio Management, LLC*, No. 8:20-cv-00749 (M.D. Fl.).

5. Westlake purchases and services auto loans for U.S. consumers and utilizes unscrupulous means to get consumers on the phone. For example, in 2015, the Consumer Finance Protection Bureau ordered Westlake to pay over $40 million in fines and refunds to borrowers

after it was found to use skip tracing and other abusive collection tactics – even pretending to be family members and local businesses so that consumers answered its calls.[1]

6. Despite that it has previously paid more than $50,000,000 to resolve TCPA claims involving prerecorded robocalls to persons who are not Westlake accountholders and other unlawful telemarketing practices, Westlake continues to make such calls.

7. Westlake clearly views the TCPA as a suggestion rather than a law that must be followed, and considers settlement payments as a cost of doing business. Absent an injunction, the company will continue to harass persons who have no relationship to the Westlake accounts at issue with repeated robocalls.

8. Accordingly, Plaintiff brings this class action, pursuant to Utah's Telephone and Facsimile Solicitation Act, Utah Code Ann. § 13-25a-101 *et seq*., for injunctive relief and statutory damages to enjoin Westlake from making robocalls, or alternatively, from robocalling any person with whom it does not have a contractual relationship providing express consent to call regarding the account for which the call was made.

9. Additionally, Plaintiff brings a claim for damages as provided by the TCPA. *See* 47 U.S.C. § 227(b)(3) (providing for an action to enjoin violations, an action for damages, or both such actions).

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under a federal statute, the TCPA.

---

[1] CFPB Administrative Proceeding No. 2015-CFPB-0026; *see* "*L.A. auto finance firms must refund $44 million for collection tactics*," L.A. Times, Oct. 1, 2015 (available at https://www.latimes.com/business/la-fi-westlake-financial-debt-collection-20151001-story.html) (last viewed Jun. 26, 2025).

11. Jurisdiction is also proper under 28 U.S.C. § 1332(d)(2) because Plaintiff and Westlake are citizens of different states. In addition, Plaintiff seeks up to $1,500.00 (one-thousand-five-hundred dollars) in damages for each call in violation of the TCPA, which, when aggregated among a proposed class numbering in the tens of thousands, or more, exceeds the $5,000,000.00 (five-million dollars) threshold for federal court jurisdiction under the Class Action Fairness Act ("CAFA"). Therefore, both the elements of diversity jurisdiction and CAFA jurisdiction are present.

12. This Court has jurisdiction over Westlake because it transacts business in this District and has committed tortious acts within this District, including but not limited to making the calls at issue in this matter to Plaintiff and the class.

13. Venue is proper in this District pursuant to 28 U.S.C.A. § 1391(b) because a substantial part of the wrongful conduct giving rise to this action occurred in this District.

## PARTIES

14. Plaintiff is, and at all times mentioned herein, a natural person who resides in Salt Lake County, Utah and is a citizen of Utah. Plaintiff is a "person" as defined by 47 U.S.C. § 153(39).

15. Westlake is a privately held finance company that specializes in the acquisition and servicing of prime to subprime automotive retail installment contracts. The company is a limited liability company organized under the laws of the state of California with its principal place of business located at 4751 Wilshire Boulevard, Suite 100, Los Angeles, California. Westlake is a "person" as defined by 47 U.S.C. § 153(39).

16. Westlake is registered as a Consumer Lender with the Utah Department of Financial Institutions and regularly collects upon consumers located in the State of Utah.

**THE TCPA**

17. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[,]" and found that federal legislation was needed because "telemarketers [could] evade [state-law] prohibitions through interstate operations.'" *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012) (citations omitted).

18. The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA. According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 F.C.C.R. 14014 (2003).

19. Relevant here, the TCPA regulations establish a national "do not call" database of numbers not to be called. *Id*. These regulations are codified at 47 C.F.R. §§ 64.1200(c)(1-2).

20. Specifically, a company may not initiate any "telephone solicitation" to a telephone subscriber "who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. § 64.1200(c)(2).

21. A violation of 47 C.F.R. § 64.1200(c) carries statutory damages of $500 to $1,500 per call and permits injunctive relief through § 227(c) of the TCPA. *See* 47 U.S.C. § 227(c)(5) (providing a private cause of action for "[a] person who has received more than one telephone call

within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection" who may seek to enjoin the unlawful actions as well as recover $500 in statutory damages for each violation, or if greater, actual damages).

22. In addition, the TCPA prohibits: (1) any person from calling a cellular telephone number; (2) using an artificial or prerecorded voice; (3) without the recipient's prior express consent. 47 U.S.C. § 227(b)(1)(A).

23. A violation of § 227(b)(1)(A) carries statutory damages of $500 to $1,500 per call and permits injunctive relief. *See* 47 U.S.C. § 227(b)(3) (providing a private cause of action "based on a violation of this subsection or the regulations prescribed under this subsection" to enjoin the violating conduct as well as recover $500 in statutory damages for each violation, or if greater, actual damages).

24. The requirements of § 227(c)(5) and § 227(b)(1)(A) are separate but cumulative. In other words, a company must comply with both the procedures for the national "do not call" database regulations, as well as the prohibition against using an artificial or prerecorded voice without the recipient's prior express consent. A failure to comply with either is a separate and distinct violation of 47 U.S.C. § 227.

## THE UTAH TELEPHONE AND FASCMILE SOLICITATION ACT

25. The TCPA creates the federal floor for telemarketing requirements, but certain states – including Utah – have raised that floor by imposing more stringent requirements.

26. In 1996, five years after Congress enacted the TCPA, the Legislature promulgated the Utah Telephone and Facsimile Solicitation Act, Utah Code Ann. § 13-25a-101 *et seq.* (the "TFSA").

27. Section 103 of the TFSA provides limitations on conduct related to telephone solicitations: "A person may not make or authorize a telephone solicitation in violation of Title 47 U.S.C. 227." *See* Utah Code Ann. § 13-25a-103(4). The TFSA defines a "telephone solicitation" as "the initiation of a telephone call or message for a commercial purpose." *See* Utah Code Ann. § 13-25a-102(8).

28. The TFSA, like the TCPA, also prohibits unsolicited telephone calls to individuals who have made clear that they do not wish to be called by registering their phone number on the NDNCR. *See* Utah Code Ann. § 13-25a-108.

29. Further, the TFSA prohibits calls for commercial purposes where the recipient has already informed a telephone solicitor that they do not wish to receive a call from the solicitor. *See* Utah Code Ann. § 13-25a-107.2.

30. A "telephone solicitor" is defined as "an individual, firm, organization, partnership, association, or corporation who makes or causes to be made an unsolicited telephone call"; "unsolicited telephone call" means a telephone call for a commercial purpose. *See* § 13-25a-103(9)-(10).

31. And although "unsolicited telephone call" excludes calls "primarily in connection with an existing debt or contract," § 13-25a-102(10)(b), the calls to Plaintiff and other non-customers fall outside this provision because Westlake did not have any contract with them.

32. The TFSA provides significant relief to plaintiffs who have suffered harassing spam calls. Under this private right of action, a party may recover: (i) the greater of $500 or actual damages, if any; (ii) court costs and reasonable attorneys' fees; and (iii) seek to enjoin any conduct in violation of the TFSA. *See* Utah Code Ann. § 13-25a-103(6).

33. Violations of the NDNCR carry extra statutory penalties; each unsolicited telephone call made in violation of Section 108 is a separate violation. *See* Utah Code Ann. § 13-25a-108(2).

34. The TFSA does not expressly provide a limitations period within the statute, and thus the "catch all" residual four-year limitations period provided by Utah Code § 78B-2-307(4) applies to TFSA claims.

35. Thus, the TFSA provides valuable rights, protections, and benefits to the people of Utah and provides individuals with the means to aggressively enforce those rights.

## STATEMENT OF FACTS

36. In the course of its business, Westlake has engaged in a repeated call campaign to Plaintiff's cellular telephone number in Utah spanning over several months in 2025.

37. Plaintiff is the subscriber and regular user of cellular telephone service for telephone number (801) xxx-7486.

38. Plaintiff's phone number has been registered on the National Do-Not-Call Registry ("NDNCR") since March 28, 2024.

39. Plaintiff has never had any relationship with Westlake.

40. Nevertheless, beginning in or around January 2025, Westlake engaged in a robocall campaign wherein it used an artificial or prerecorded voice to make telephone calls to Plaintiff's cellular telephone number regarding the account of a third-party unknown to Plaintiff.

41. For example, on January 28, 2025, at approximately 8:01 a.m., Plaintiff received a telephone call from 1-888-375-7438. When Plaintiff answered the call, an artificial voice stated: "Hello, this is Taylor, an A.I. assistant from Westlake Financial. I'm calling from a recorded or monitored line. May I please speak with Lorraine."

42. Plaintiff attempted to inform Westlake that the call was intended for a third party by stating "operator." Instead of transferring the call to a human being as requested the A.I. voice stated "a live agent will call you right back."

43. That same date, January 28, 2025, at approximately 10:11 a.m., Plaintiff received a call from 1-866-619-2521. The caller left a voicemail for Plaintiff that stated: "This is Erica from Westlake Financial Services. I'm reaching out about the vehicle you purchased. Please give me us a call back at 1-866-619-2521."

44. Plaintiff's voicemail message played for inbound calls at that time stated that the caller has reached "David." Westlake thus had actual knowledge that Plaintiff was not its customer. Yet, the calls from Westlake persisted.

45. Plaintiff continued to receive calls from Westlake, including a call on March 27, 2025, at approximately 8:37 a.m. from (801) 730-3226. When Plaintiff answered the call from this seemingly-local number, the female caller stated that she was calling from Westlake Financial and once again asked for Lorraine. In response, Plaintiff reiterated that Westlake had the incorrect number. Instead of apologizing and removing Plaintiff's cell number from its calling queue, the caller *asked* again for Lorraine. The caller hung up when Plaintiff repeated that Westlake had called the wrong number.

46. Plaintiff resided in the state of Utah at the time that he received each of the three calls from Westlake.

47. The calls from Westlake caused disruption to Plaintiff's daily life by delaying him as he got ready for work and hindering his ability to complete his job duties.

48. Plaintiff and members of the class suffered harm as a result including, but not limited to, annoyance, nuisance, harassment, invasion of their respective privacy interests, intrusion upon seclusion, and trespass or occupation of their respective telephone lines.

49. Congress and the Utah Legislature have statutorily elevated the rights of individuals to be free from and legally protected against the types of calls which violate the TCPA and TFSA, and Westlake has harmed Plaintiff and the class members by invading this legally protected right.

50. The rights protected by the TCPA and TFSA closely relate to rights enforceable at common law, including without limitation to the torts of intrusion upon seclusion, nuisance, harassment, tortious infliction of emotional distress, and unreasonable collection practices.

51. Westlake knows that prerecorded voice calls to third parties without consent are illegal when made to cellular telephone numbers, yet it continues to do so flagrantly. This demonstrates that Westlake simply views the $50,000,000 it has paid in TCPA settlements and CFPB fines as a cost of doing business.

52. The plain language of the TCPA and TFSA is clear in prohibiting the calls that Westlake made to Plaintiff in January and March 2025.

53. Westlake's violations of the TCPA were willful and knowing.

54. All conditions precedent to bringing this action have been complied with.

## CLASS ALLEGATIONS

55. This action is brought on behalf of the following classes of individuals:

**The TCPA Prerecorded Call Class (the "Prerecorded Class"):**

All cellular subscribers who at any time before the date of class certification:

> Westlake called through use of an AI message, where the telephone number called was not assigned to a current or former Westlake customer or authorized user.

> Subclass: Persons who fall within the Class with a Utah area code or residential Utah address, who received two or more calls within a 12-month period from Westlake, where the number called was on the National Do Not Call Registry at the time of the calls.

56. Excluded from the class are Defendant's officers, directors, employees and agents, as well as Plaintiff's counsel, and any member of the judiciary presiding over this action. The exact size of the classes is information within the exclusive knowledge of the Defendants, but Plaintiff believes each of the classes contains no less than 100 members. Plaintiff reserves the right to modify these class definitions as he obtains relevant information, including call records, through discovery.

57. **Numerosity**: Upon information and belief, Westlake has placed prerecorded calls to cellular telephone numbers belonging to thousands of consumers throughout the United States without their prior express consent as well as to persons whose numbers were on the UDNCR. This allegation is based upon the following information: (1) Westlake has been repeatedly sued for this conduct and settled a class action lawsuit over this exact conduct, (2) the prerecorded call to Plaintiff was generic and references an "AI assistant" which indicates it was made using automated means; (3) the costs and market rate of making such calls is pennies per call, and (4) the very purpose of prerecorded message calling is to call numerous persons in a short amount of time.

58. Therefore, it is clear that individual joinder in this case is impracticable. The exact number and identities of class members can easily be ascertained through discovery from Westlake's call records.

59. **Commonality**: There are numerous questions of law and fact common to each class, which common issues predominate over any issues involving only individual class members. The principal issues include:

a. Whether Westlake initiated the calls to Plaintiff and the class using an used an artificial or prerecorded voice in violation of the TCPA;

b. Whether Westlake had a duty to state a call back telephone number in the script of its calls;

c. Whether the class members' numbers were on the UDNCR at the time Westlake called them;

d. Whether Westlake should be enjoined from such conduct in the future; and

e. Whether the telephone calls were made knowingly or willfully.

60. **Typicality:** Plaintiff's claims are typical of the claims of the proposed class members. Plaintiff would only seek individual or actual damages if class certification is denied. In addition, Plaintiff is entitled to relief under the same causes of action and upon the same facts as the other members of the proposed class.

61. **Adequacy of Representation**: Plaintiff will fairly and adequately represent and protect the interests of the class and has retained competent counsel experienced in complex litigation and class action litigation, particularly TCPA matters. Plaintiff has no interests antagonistic to those of the class, and Westlake has no defenses unique to Plaintiff. Neither Plaintiff nor his counsel have any interests which might cause them not to vigorously pursue this action.

62. **Appropriateness**: Certification of the class under Rule 23(b)(2) is appropriate in that Westlake has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole. A class action, on the other hand, provides the benefits of fewer management difficulties, single adjudication, economy of scale, and comprehensive supervision before a single court, and would result in reduced time, effort and expense for all parties and the Court, and ultimately, the

uniformity of decisions.

63. **Predominance and Superiority.** Certification under Rule 23(b)(3) is also appropriate because common questions—including whether Defendant used an artificial or prerecorded voice, whether numbers were listed on the National Do-Not-Call Registry, and whether consent existed—predominate over individual issues, and a class action is superior to individual suits.

**COUNT ONE: IMPROPER ROBOCALLS**
**47 U.S.C. § 227(b)(3)**
**(On Behalf of Plaintiff and the Prerecorded Class)**

64. Plaintiff incorporates all prior allegations as if fully set forth herein.

65. The above-referenced conduct by Westlake constitutes violations of the TCPA and/or its implementing regulations.

66. The TCPA prohibits making any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an artificial or prerecorded voice to any telephone number assigned to a cellular telephone service. *See* 47 U.S.C. §227(b)(1)(A)(iii); 47 CFR § 64.1200(a)(1)(iii).

67. Westlake, or third-parties directed by Westlake – made non-emergency telephone calls to the cellular telephones of Plaintiff and members of the putative nationwide Prerecorded Class using an artificial or prerecorded voice.

68. These calls were made without regard to whether or not Westlake had first obtained express permission from the called party to make such calls. In fact, Westlake did not have prior express consent to call the cell phones of Plaintiff and the other members of the putative Prerecorded Class when its calls were made.

69. Westlake has, therefore, violated § 227(b)(1)(A)(iii) of the TCPA by using artificial or pre-recorded voice messages to make non-emergency telephone calls to the cell phones of Plaintiff and the other members of the putative Class without their prior express written consent.

70. The TCPA, 47 C.F.R. § 64.1200(b)(2)(B), *also* requires that:

All prerecorded or artificial messages shall:

> During or after the message, state clearly the telephone number (other than that of the autodialer or prerecorded message player that placed the call) of such business, other entity, or individual. …

47 C.F.R. § 64.1200(b)(2)(B) (paragraph break supplied).

71. Some of the artificial or prerecorded messages played by Westlake did not state a telephone number.

72. For example the call Plaintiff received on January 28, 2025, completed its salutation without stating a telephone number.

73. What is more, when Plaintiff stated "operator" on the call, Westlake did not connect him with an operator or state a phone number to call Westlake. Instead Westlake told plaintiff that it would call him back (on its own time).

74. Other calls, too, failed to recite a telephone number, such as the March 25, 2025, call.

75. Westlake is able to state a call back number during its artificial voice salutation, as demonstrated by other calls Plaintiff received.

76. Westlake continued to make robocalls to Plaintiff despite express notification that it did not have consent. Plaintiff and the Prerecorded Class members have no connection to the account that are the subject of the calls.

77. Additionally and/or alternatively, Westlake's prerecorded messages failed to state Westlake's telephone number during or after the message, in violation of 47 C.F.R. § 64.1200(b)(2), which is enforceable via 47 U.S.C. § 227(b)(3).

78. Westlake continues to make such calls despite already paying out almost $10,000,000 to resolve similar class action claims in the past.

79. Westlake knew that it did not have prior express consent to make these calls and knew or should have known that it was using an artificial or prerecorded voice. Westlake's conduct is both willful and knowing.

80. The only way to effectively prevent Westlake's continued and repeated violations of the TCPA with respect to persons who have no relation to the subject accounts with Westlake is to enjoin it from using artificial or prerecorded voice calls until it can provide a protocol sufficient to prevent its continued violations of the law.

81. Accordingly, Plaintiff brings this action on behalf of himself and similarly situated class members, pursuant to 47 U.S.C. § 227(b)(3), to remedy Westlake's systemic and continuous TCPA violations.

82. On behalf of himself and the proposed Prerecorded Class members, Plaintiff seeks: (1) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the proposed Prerecorded Class by requiring Defendant to comply with the TCPA as described herein; and (2) statutory damages at a minimum of $500 for each violation and a maximum of $1,500 for each willful violation.

## **COUNT TWO: UTAH DNC REGISTRY**
**Utah Code Ann. § 13-25a-108; see also § 13-25a-103(4)**
**(On Behalf of Plaintiff and the NDNC Sub-Class)**

83. Plaintiff re-alleges and incorporates all prior allegations.

84. Plaintiff registered his number on the National Do-Not-Call Registry on about March 28, 2024, and remained continuously registered at all relevant times.

85. As was its standard policy and practice, Westlake made more than one telephone solicitation call within a 12-month period to Plaintiff and members of the NDNCR Subclass while their numbers were listed on the National Do-Not-Call Registry, in violation of 47 U.S.C. § 227(c) and its implementing regulations. Those violations constitute violations of the Utah Telephone and Facsimile Solicitation Act (TFSA), including Utah Code Ann. § 13-25a-108 and § 13-25a-103(4).

86. Because Plaintiff and the NDNCR Subclass had no debt or contract with Westlake, the calls were not primarily in connection with an existing debt or contract, and therefore qualify as "telephone solicitations" under Utah Code Ann. § 13-25a-102.

87. Westlake knew that it did not have prior express consent to make these calls because Plaintiff and the NDNC Sub-Class members' phone numbers were on the National Do-Not-Call Registry at the time of the calls.

88. Westlake's violations were willful and/or knowing.

WHEREFORE, Plaintiff, on behalf of himself and the NDNCR Subclass, seeks all relief available under the TFSA, including statutory damages, treble or enhanced damages where authorized, injunctive relief, fees and costs, and such other relief as the Court deems just and proper.

89. On behalf of himself and the proposed NDNC Sub-Class members, Plaintiff seeks: (1) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the proposed NDNC Sub-Class by requiring Defendant to comply with the TFSA as described herein; (2) statutory damages at a minimum of $500 for each violation; and (3) court costs and reasonable attorneys' fees as determined by the Court.

## JURY TRIAL DEMAND

90. Plaintiff hereby demands a trial by jury on all issues so triable.

## DOCUMENT PRESERVATION DEMAND

91. Plaintiff hereby demands that the Westlake take affirmative steps to preserve all telephone recordings, data, emails, other recordings, phone records, dialer records, documents and all other tangible things that relate to the allegations herein, Plaintiff or the putative class members, or the making of telephone calls, the events described herein, any third party associated with any telephone call, campaign, telemarketing, account, sale or file associated with plaintiff or the putative class members, and any account or number or symbol relating to any of them. These materials are very likely relevant to the litigation of this claim. If Westlake is aware of any third party that has possession, custody or control of any such materials, Plaintiff demands that Westlake request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the defendants.

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of himself and the class he seeks to represent against Westlake, as follows:

A. Certification of this matter to proceed as a class action;

B. That Westlake be enjoined from the above-described conduct in violation of the TCPA;

C. That Westlake be enjoined from the above-described conduct in violation of the TFSA;

D. That Plaintiff be awarded damages in the amounts provided by statute;

E. That Plaintiff and members of the class be awarded the expenses of litigation, including a reasonable attorneys' fee.

F. That Plaintiff and members of the class be awarded such additional relief as deemed just and proper.

Respectfully submitted,

By: /s/ Daniel Baczynski

Daniel Baczynski
BACZYNSKI LAW, PLLC
dan@bskilaw.com

Alexander H. Burke (*pro hac vice to be filed*)
Kyle D. McLean (*pro hac vice to be filed*)
BURKE LAW OFFICES, LLC
909 Davis Street, Suite 500
Evanston, IL 60201
(312) 729-5288
ABurke@BurkeLawLLC.com
KMcLean@BurkeLawLLC.com